IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ABINGDON

| | |
|---|---|
| POINT BROADBAND FIBER HOLDING, LLC and SUNSET DIGITAL COMMUNICATIONS, LLC | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:20CV48 ) |
| POWELL VALLEY ELECTRIC COOPERATIVE, INC. | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Now comes the plaintiffs, Point Broad Fiber Holding, LLC ("Point") and Sunset Digital Communications, LLC ("Sunset"), by counsel, and for its complaint against the defendant, Powell Valley Electric Cooperative, Inc. ("PVEC"), states as follows:

## INTRODUCTION

This complaint arises out of anti-competitive and unjustified actions by PVEC with respect to certain poles owned by PVEC in Tennessee and Virginia, which Point and Sunset have the right to utilize under that certain Joint Use Pole Attachment Agreement dated January 1, 2017 (the "Pole Attachment Agreement") by and between PVEC and Sunset. Point obtained its rights under the Pole Attachment Agreement on August 2, 2018.

The parties worked together for two years under the Pole Attachment Agreement. In fact, Point contracted with PVEC for PVEC to install fiber optic cable upon PVEC's poles under two separate construction agreements. This fiber construction allowed Point to supply rural customers who had never had access to broadband internet before.

1

During that time, PVEC, an electric co-operative, then decided to enter the broadband internet business itself along with a partner. Shortly thereafter, PVEC took the incorrect position that Point did not have the right to attach to PVEC's poles.

Recently, PVEC had baselessly raised issues with Point's and Sunset's use of the poles under the Pole Attachment Agreement, causing Sunset to file an action with the Virginia State Corporation Commission ("VSCC"), *Petition of Sunset Digital Communications (DE), LLC (used in Virginia by Sunset Digital Communications, LLC)*, Case No. PUR-2020-00143 ("VSCC Case"). In direct contravention of the VSCC's orders in the VSCC Case, PVEC has attempted to interfere with Point's and Sunset's access to the market and engage in anti-competitive, monopolistic behavior in violation of the rights of Sunset, Point, and all consumers in the affected service areas.

## THE PARTIES

1. Point is a Georgia limited liability company with its principal place of business located at 1791 O.G. Skinner Drive, West Point, Georgia, 31833.

2. Sunset is a Delaware limited liability company with its principal place of business located at 1791 O.G. Skinner Drive, West Point, Georgia, 31833.

3. PVEC is a Virginia nonstock corporation with its principal place of business located at PO Box 1528, New Tazewell, Tennessee 37824.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

5. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTS

6. Sunset is a provider of fiber optics and serves areas throughout Southwest Virginia.

7. Point is a fiber optic provider of internet, television, and phone services and serves areas through Virginia and Tennessee.

8. PVEC is an electric cooperative who serves areas throughout Southwest Virginia and Northeast Tennessee. In order to provide electric services, PVEC owns a number of utility poles throughout its service areas.

9. On January 1, 2017, Point's predecessor and PVEC executed the Pole Attachment Agreement, establishing Sunset's right to use PVEC poles in both Tennessee and Virginia.

10. By agreement dated August 2, 2018, Sunset and Point obtained these rights.

11. Since such asset sale, Point and Sunset continued to operate in good faith under the Pole Attachment Agreement with PVEC.

12. Indeed, PVEC installed much of Point's new fiber on PVEC's utility poles pursuant to those certain Construction Agreements dated November 4, 2018 and February 20, 2019.

13. During that time, PVEC, an electric co-operative, then decided to enter the broadband internet business itself along with a partner.

14. However, in 2020, PVEC unexpectedly and baselessly began raising issues with Point's and Sunset's use of PVEC poles under the Pole Attachment Agreement.

15. PVEC also began to engage in anti-competitive behavior to obstruct Point's and Sunset's entry into the local utility market and harm Point's and Sunset's business.

16. For instance, despite the existence of the Pole Attachment Agreement, employees of PVEC have intentionally and repeatedly interfered with Point and Sunset employees attaching to PVEC poles, including "service drops" for Point and Sunset customers.

17. Despite the existence of the Pole Attachment Agreement, employees of PVEC have intentionally and repeatedly prevented Point and Sunset employees from setting up new lines to PVEC poles for customers.

18. In an attempt to prevent Sunset and Point from operating under the Pole Attachment Agreement, PVEC employees have threatened to have employees of Sunset and Point arrested.

19. The unjustified actions of PVEC have substantially and materially interfered with Sunset and Point serving its current and prospective customers.

20. Based on PVEC's actions, it appears that it is PVEC's goal and intention to prevent Point and Sunset from competing with PVEC.

21. In addition to preventing Sunset and Point from installing fiber optics for the benefit of their customers, PVEC has contacted customers of Sunset and Point to inform such customers (inaccurately) that Sunset and Point are using PVEC's poles illegally. PVEC then offers to install the customers' services itself.

22. Upon information and belief, PVEC has also cut fiber owned by Sunset and Point that was being used to serve customers of Sunset and Point.

23. In an effort to cause PVEC to operate in good faith under the Pole Attachment Agreement, Sunset filed the VSCC Case.

24. In that petition, Sunset requests that VSCC order PVEC to abide by the Joint Use Pole Attachment Agreement or in the alternative that VSCC order PVEC to enter into good faith negotiations for a new pole attachment agreement.

25. Subsequently, PVEC has asserted the position that the Tennessee Valley Authority (the "TVA") is its regulator, and, as such, has exclusive jurisdiction over determining the rates, terms, and conditions of sale of any surplus power.

4

26. The VSCC has since ordered the parties to negotiate a new pole attachment agreement, which included an agreement for poles in both Virginia and Tennessee.

27. In accordance with the VSCC's directive, Sunset and Point have engaged in good faith negotiations respecting the new pole attachment.

28. Contrary to the VSCC's direct order and without warning, on September 24, 2020, PVEC sent a letter to Sunset and Point demanding that by 3:00 p.m. on September 25, that Sunset and Point confirm that they have "discontinued all its activities and that of its employees, officers, agents and contractors from entering onto, into, and upon the property and easement rights of PVEC it has for its our use [*sic*] of the property; and that Point will make no new additional attachments, devices, equipment or other items of personal property placed or to be placed or affixed to PVEC's its [*sic*] poles, equipment and facilities."

29. PVEC issued this demand letter with no authority or basis.

30. PVEC's actions substantially and materially interfere with the existing and enforceable rights of Sunset and Point, causing immediate and irreparable harm to Sunset, Point, and the consumers in the affected service areas.

31. PVEC's actions evidence an intent and an attempt to monopolize the service areas in which PVEC poles are located.

**COUNT I**
**INJUNCTIVE RELIEF**

32. Sunset and Point adopts and reincorporates the allegations of Paragraphs 1-30 of the Complaint.

33. As established herein, PVEC is actively and intentionally interfering with the rights of Sunset and Point under the Pole Attachment Agreement.

34. Not only is PVEC preventing Sunset and Point from installing fiber optics for the benefit of their customers, PVEC has contacted customers of Sunset and Point to inform such customers (inaccurately) that Sunset and Point were on PVEC's poles illegally. PVEC then offers to install the customers' services itself.

35. Upon information and belief, PVEC has also took possession of fiber owned by Sunset and Point that was being used to serve customers of Sunset and Point in an effort to prevent Sunset and Point from providing telecommunications services competitive with PVEC.

36. Based on the evidence that will be shown, Sunset and Point are likely to succeed on the merits of their claims against PVEC.

37. PVEC is causing immediate and irreparable harm to Sunset and Point, which inherently harms the customers of Sunset and Point, as well as all consumers in the affected service areas of Southwest Virginia and Northeast Tennessee.

38. Without immediate injunctive relief, upon information and belief, PVEC will continue to actively and intentionally interfere with the rights of Sunset and Point under the Pole Attachment Agreement, and continue to attempt to nefariously steal current and prospective customers of Sunset and Point.

39. The balance of equities and the public interest favor granting injunctive relief to Sunset and Point.

40. Sunset and Point have a significant interest in providing current and prospective customers with competitive telecommunications rates and services.

41. The granting of injunctive relief will not prohibit consumer choice, but rather protect it.

Bristol: 933894-1

42. Injunctive relief at this stage will simply require PVEC honor its contractual and legal obligations.

43. Accordingly, Sunset and Point are entitled to both a temporary restraining order and preliminary injunctive relief against PVEC.

## COUNT II
## VIOLATION OF SECTION 2 OF THE SHERMAN ANTITRUST ACT

44. Sunset and Point adopts and reincorporates the allegations of Paragraphs 1-42 of the Complaint.

45. Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, prohibits the monopolization of trade or commerce.

46. A monopolist in possession of facilities that are essential for competition by others with the monopolist, and that cannot practically be duplicated, must share those facilities with its competitors on fair and reasonable terms. Imposition of unreasonable rates and terms constitutes a denial of access.

47. A monopolist's refusal to grant a competitor access to an essential facility on reasonable terms violates Section 2 of the Sherman Act because of the danger that the monopolist will use its market power in one market to extend its monopoly into another.

48. PVEC has monopoly power and control over the PVEC poles and the service areas served by those poles.

49. PVEC has the market power sufficient to exclude anyone from using its utility poles within Southwest Virginia and Northeast Tennessee.

50. PVEC has the market power sufficient to economically inhibit, prohibit, or restrict anyone from using its utility poles to compete with it in services that are provided over distribution facilities that are attached to utility poles in Southwest Virginia and Northeast Tennessee.

51.     The utility poles owned by PVEC are an essential facility for Point and Sunset in Southwest Virginia and Northeast Tennessee.  Sunset and Point cannot operate its Southwest Virginia and Northeast Tennessee telecommunications system, or provide or distribute telecommunication services over that system, without the use of the utility poles owed by PVEC.  Sunset and Point cannot provide telecommunications services in competition with PVEC with access to, and use of, the utility poles owned by PVEC.

52.     Sunset and Point cannot practically or economically duplicate the utility poles owned by PVEC in Southwest Virginia and Northeast Tennessee.  Sunset and Point have no practical or economic alternatives to the utility poles owned by PVEC.

53.     PVEC actually and directly competes with Sunset and Point in the provision of fiber optic distribution facilities and in the provision of telecommunications services in Southwest Virginia and Northeast Tennessee.

54.     PVEC has taken steps to inhibit and prohibit Sunset and Point from providing telecommunications services to their existing customers in an effort to steal the customers of Sunset and Point and to monopolize the service areas.

55.     PVEC has taken such actions despite the right of Sunset and Point to utilize PVEC utility poles under the Pole Attachment Agreement.

56.     The use of the utility poles owned by PVEC by Sunset and Point is economically and technically feasible.

57.     The conduct of PVEC has effectively and actually denied Sunset and Point access to an essential facility — the utility poles owned by PVEC — on reasonable terms. This conduct by PVEC constitutes an abuse of its monopoly power over the utility poles in Southwest Virginia and Northwest Tennessee, in violation of 15 U.S.C. § 2.

Bristol: 933894-1

58.     Competition in the market for pole attachments in Southwest Virginia and Northeast Tennessee has suffered as a direct and proximate result of the conduct of PVEC. Consumers in Southwest Virginia and Northeast Tennessee also have suffered as a direct and proximate result of the conduct of PVEC by having less choice for telecommunications services.

59.     The intentional actions of PVEC have impaired ability of Sunset and Point to provide telecommunications services at affordable, competitive rates, and have reduced their ability to expand its services and introduce new services. In each respect, Sunset and Point have been prevented from more effectively expanding or upgrading their services, from more effectively operating its systems and serving customers, and from competing more effectively in the Southwest Virginia and Northeast Tennessee marketplaces.

60.     As a result of the described violation of Sherman Act § 2, Sunset and Point are entitled to compensatory damages, treble damages in an amount three times actual damages, attorneys' fees and costs, and declaratory and injunctive relief.

WHEREFORE, Sunset and Point respectfully request that the Court:

1. Issue a temporary retaining order preventing PVEC from interfering with the rights of Sunset and Point under the Pole Attachment Agreement;

2. Issue a preliminary injunction preventing PVEC from interfering with the rights of Sunset and Point under the Pole Attachment Agreement;

3. Award Sunset and Point compensatory damages, treble damages in an amount three times actual damages, attorneys' fees and costs, and declaratory and injunctive relief based on PVEC's violation of 15 U.S.C. § 2; and

4. Award Sunset and Point such other any further relief as the Court may deem appropriate.

9

              POINT BROADBAND FIBER HOLDING, LLC
              SUNSET DIGITAL COMMUNICATIONS, LLC

              By Counsel

              By: _____/s/ Cameron S. Bell_____

Cameron S. Bell
VSB No. 47685
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia 24212
Telephone:  (276) 628-5151
Facsimile:  (276) 628-5621
cbell@pennstuart.com